IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARCOS ANTONIO RIOS, | § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 3:23-cv-00336-S (BT) |
| CITY OF CORSICANA, et al., | § § § | |
| Defendants. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Defendants the City of Corsicana and Corsicana Police Department (CPD) Officer Jacob Palos filed a Rule 12(b)(6) Motion to Dismiss (ECF No. 14) this *pro se* civil rights action brought under 42 U.S.C. § 1983. For the reasons set forth below, the District Judge should GRANT Defendants' Motion and DISMISS Plaintiff's claims, unless Plaintiff—within the time to file objections to this recommendation, or a deadline otherwise established by the District Judge—files an amended complaint that sets forth additional facts to state a claim on which relief can be granted.

**Background**

Plaintiff Marcos Antonio Rios, proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. § 1983 against the City of Corsicana and Officer Palos on February 14, 2023. Compl. (ECF No. 3). In his original Complaint, Rios alleges that his constitutional rights were violated during

1

his arrest in March 2021, when Officer Palos used "excessive force." *Id.* at 3. More specifically, Rios's factual allegations—in their entirety—are as follows:

> My constitutional rights were violated due to the fact on or about March 3rd, 2021 while being arrested for failure to id Officer Jacob Palos having me layed [sic] face down with both of my hands handcuffed behind my back knowingly and willingly discharged his weapon (JPX gun) at point-blank range into the left side of my face causing severe burns from muzzle flash, my upper left molar to be broken, swelling and contusions on my face as well as extreme pain and suffering for multiple weeks after.

*Id.* at 4. As relief, Rios seeks $250,000 in monetary damages. *Id.*

When Rios filed his Complaint in February 2023, he was a pretrial detainee at the Navarro County Jail, and he had numerous charges pending against him in Navarro County. *See* Order 1 (ECF No. 6); MJQ 2-4 (ECF No. 8). Rios alleged that at least one of the pending cases was directly related to the events giving rise to his claims in this action. Compl. 4 (ECF No. 3) (alleging his constitutional rights were violated "on or about March 3rd, 2021 while being arrested for failure to id"). Accordingly, the Court stayed and administratively closed this case pending the resolution of Rios's underlying state criminal charges. Order 1-2 (ECF No. 6) (citing *Gross v. Normand*, 576 F. App'x 318, 319 (5th Cir. 2014) (per curiam) ("[A] court should stay proceedings in a § 1983 case brought by a pretrial detainee until the related pending criminal case is resolved.")).

On October 13, 2023, the Court lifted the stay and reopened the case

after receiving Rios's answers to a Magistrate Judge's Questionnaire (MJQ).[1] Elec. Order (ECF No. 10). Rios's answers clarified that only two of his criminal cases in Navarro County are related to his claims in this case: (1) Cause No. CR-80376—failure to identify fugitive/intent to give false information; and (2) Cause No. CR-80377—surety off bond/resisting arrest, search, or transport. *See* Pl.'s Resp. to MJQ 2 (ECF No. 9) (explaining that those cases are related to his claims in this case "due to the fact that on or about March 3rd, 2021 while being arrested for both said cases, Officer Jacob Palos 'under color' of law knowingly and willing violated my constitutional rights by using excessive force"). Rios also stated that the related criminal cases were resolved when he entered a plea of no contest to the charges and, pursuant to a plea agreement, he was sentenced to 365 days in custody and given credit for 375 days based on time served. *Id.*

Pursuant to the Court's instructions, the United States Marshal served the City and Officer Palos. *See* ECF No. 13. And on December 5, 2023, Defendants filed a joint Motion to Dismiss (ECF No. 14), as well as a joint Answer (ECF No. 15). In their Answer, Defendants admit Officer Palos arrested Rios on March 3, 2021, on charges of Failure to Identify/Fugitive and Resisting Arrest/Search/Transport, and that Officer

---

[1] The plaintiff's answers to a magistrate judge's questionnaire constitute an amendment to his complaint. *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

3

Palos deployed a "pepper ball device in an attempt to overcome [Rios's] resistance to arrest." Answer 1 (ECF No. 15). Defendant Palos further asserted the defense of qualified immunity and pleaded the following specific facts in support of the defense:

> At the time of the arrest, Defendant [Palos] was employed as a police officer for the City of Corsicana, Tx, and was on duty in his position as a narcotics officer for the Corsicana Police Dept. Defendant was in civilian clothes wearing an equipment vest which clearly identified him as a police officer. The word "Police" was present on the vest in large white letters. Defendant has been a commissioned peace officer in the State of Texas for almost seven years. Defendant and the officer (a veteran Lieutenant) driving their vehicle observed Plaintiff standing in a darkened area around the corner from the convenience store and in relative darkness. Plaintiff was walking around, gesturing and talking (there was no one else present) and holding a cup. Both Officer Palos and the other officer with him who was driving their police vehicle suspected at that time that Plaintiff was either intoxicated or high on drugs. The location was a known 'hangout' for drug dealers and multiple arrests for narcotics offenses had been made there. Officer Palos approached Plaintiff and began speaking with him requesting Plaintiff's identification. During the initial encounter, the other officer was inspecting a second beverage cup observed near Plaintiff. Plaintiff responded with a name and date of birth later determined to be false. As the conversation between Officer Palos and Plaintiff continued, Plaintiff admitted his true name and date of birth. Officer Palos then determined that an arrest warrant existed for Plaintiff from another agency. Officer Palos attempted to arrest Plaintiff whereupon Plaintiff fled a short distance by running across the parking lot. Officer Palos quickly caught Plaintiff and brought him to the ground even though Plaintiff continued to physically resist the officer's attempt to arrest him by thrashing about and physically resisting the officer's efforts to restrain Plaintiff. The other officer present quickly moved to assist and proceeded to handcuff Plaintiff overcoming Plaintiff's continued resistance consisting of thrashing about and physically resisting the officers' efforts to

restrain Plaintiff. At one point, the other officer told Officer Palos, "He has the cuffs" causing Officer Palos to fear that Plaintiff now had a weapon available. Plaintiff continued to resist and fought the officers by thrashing about and physically resisting the officers' attempt to place his hands behind him. In an attempt to overcome this resistance, Officer Palos deployed his JPX device (this is a pistol-like device which emits a pepper spray gas gel). Officer Palos was attempting to deploy the pepper gas into the pavement/ground near Plaintiff's face. However, due to Plaintiff's thrashing about and moving his head, the gas gel from the device apparently struck Plaintiff in the side of his head causing minor injury. The gel emitted by the device is a red color causing Plaintiff to appear more injured than he was. At the scene, Officer Palos observed a swelling on the side of Plaintiff's face and a red mark there; but did not observe that the skin was broken. Officer Palos did not use other, more serious, available force tactics such as potentially lethal hand-to-hand strikes, impact weapons or his firearm. The pepper spray from the device was emitted into Plaintiff's face whereupon Plaintiff's resistance ceased and the arrest was completed. The device does not emit a "muzzle flash" as alleged in the Complaint. Officer Palos was trained that the JPX pepper spray device is a non-lethal use of force and may by [sic] deployed near a suspect's face in the manner in which Officer Palos was attempting at the time of the incident. Medical personnel were summoned to the scene per department directives requiring same whenever such non-lethal devices are deployed. Plaintiff was then released for incarceration by the local hospital.

*Id.* 2-4.

In their Motion, Defendants argue that Rios fails to state a claim against the City for municipal liability under § 1983 because the Complaint does not allege that any purported legal deprivation resulted from a policy, practice, or custom of the City. Mot. Dismiss ¶¶ 2-3 (ECF No. 14). Regarding his claims against Officer Palos, Defendants contend that Rios has not pleaded facts sufficient to overcome the asserted qualified

5

immunity defense. *Id.* ¶¶ 6-9; Answer ¶ 4 (ECF No. 15).

In his Response, Rios reiterates that Officer Palos used excessive force against him in violation of his Fourth Amendment rights. Resp. 1 (ECF No. 18). Rios also references body camera footage capturing the arrest. *Id.* at 2. Rios does not describe the camera footage, but he alleges that such footage will "show evidence that surpass [his] burden to prove liability" and "show that no reasonable official in the shoes of the Defendant could have believed that the actions taken were consistent with the preservation of the legal rights asserted by [Rios]." *Id.* at 2. Rios also adds an allegation regarding his alleged injury, asserting that he "acquired medical bills" as a result of the excessive force. *Id.* at 1.

Defendants' Motion to Dismiss is fully briefed and ready for disposition.

## Legal Standards

To survive a Rule 12(b)(6) motion, a plaintiff's complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555).

This pleading standard does not require "detailed factual

6

allegations," but it does demand more than an unadorned accusation devoid of factual support. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Where the facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the plaintiff is plausibly entitled to relief. *Id.* at 678 (citing *Twombly*, 550 U.S. at 557).

When applying the plausibility standard, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and citations omitted). But a court may not look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Review is "limited to the complaint, any documents attached to the complaint, and any documents attached to the [motion to dismiss] that are central to the claim and referenced by the complaint." *Smith v. Buffalo Wild Wings*, 2021 WL 4265849, at *2 (N.D. Tex. Sept. 20, 2021)

7

(Fitzwater, J.) (citing *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)); *see also Inclusive Communities Project, Inc. v. Heartland Cmty. Ass'n, Inc.*, 399 F. Supp. 3d 657, 665 (N.D. Tex. 2019) ("In ruling on [a Rule 12(b)(6)] motion, the court cannot look beyond the pleadings." (citing *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999))), aff'd, 824 F. App'x 210 (5th Cir. 2020).

Courts considering Rule 12(b)(6) motions generally hold *pro se* complaints to less stringent standards than formal pleadings drafted by lawyers. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (quoting *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981)). However, "despite [the] general willingness to construe *pro se* filings liberally," courts "still require *pro se* parties to fundamentally abide by the rules that govern the federal courts." *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014), *as revised* (Sept. 18, 2014) (cleaned up). Therefore, a *pro se* plaintiff is not excused from the requirements to "properly plead sufficient facts that, when liberally construed, state a plausible claim to relief . . . ." *Id.* (citations omitted).

## Analysis

A. <u>Rios fails to state a § 1983 claim for municipal liability against the City of Corsicana.</u>

To prevail on a claim for municipal liability under § 1983, "a plaintiff must show the deprivation of a federally protected right caused by action

8

taken 'pursuant to an official municipal policy.'" *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (citing *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Thus, to state a claim for municipal liability, "[a] plaintiff must identify: '(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom.'" *Id.* at 541-42. (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)). "[I]solated unconstitutional actions by municipal employees will almost never trigger [municipal] liability." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984); *McKee v. City of Rockwall*, 877 F.2d 409, 415 (5th Cir. 1989)).

Here, Rios completely fails to identify any official policy (or custom) or any policymaker for the City of Corsicana. Indeed, he does not present any allegation whatsoever regarding the City. Rios only provides allegations regarding the conduct of Officer Palos during his arrest on March 3, 2021. And while § 1983 claims may be brought against municipalities "where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," municipalities cannot be held liable solely for employing a tortfeasor; that is, they "cannot be held liable under § 1983 on a *respondeat superior*

9

theory." *Monell*, 436 U.S. at 690-91; *see also Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) (citations omitted) ("We have consistently refused to hold municipalities liable under a theory of *respondeat superior*."). This is because "under § 1983, local governments are responsible only for 'their *own* illegal acts.'" *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (Thomas, J.) (emphasis in original) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)). And "[t]hey are not vicariously liable under § 1983 for their employees' actions." *Id.* (citations omitted).

By relying on allegations regarding only Officer Palos's individual actions—instead of allegations pertaining to an official policy and a policymaker, Rios fails to state a claim against the City under § 1983. The District Judge should therefore grant Defendants' Motion as to Rios's claims against the City.

### B. *Rios fails to plead sufficient facts to overcome Officer Palos's qualified immunity defense.*

Defendants raise the defense of qualified immunity regarding Rios's excessive force claim against Officer Palos. Defendants contend that, at the time Officer Palos employed force against Rios, Rios "was attempting to flee and was resisting arrest as he thrashed about fighting the officers." Reply 5 (ECF No. 19); *see also* Answer 4 (ECF No. 15) ("[Rios] continued to resist and fought the officers by thrashing about and physically resisting the officers' attempt to place his hands behind him. In an attempt to

10

overcome this resistance, Officer Palos deployed his JPX device . . . ."). Accordingly, Defendants argue, Palos's use of force was not excessive under the circumstances and did not violate Rios's rights. *See* Mot. Dismiss ¶ 9 (ECF No. 14).

"When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021). *See also King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016) ("[O]nce properly raised by the defendant, the 'plaintiff has the burden to negate the assertion of qualified immunity.'" (citing *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009)); *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) ("[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity."). "The qualified immunity analysis has two components: (1) whether a plaintiff alleges or shows the violation of a federal constitutional or statutory right; and (2) whether the right in question was clearly established at the time of the alleged violation." *Ramirez*, 3 F.4th at 133 (citing *Pearson*, 555 U.S. at 232). Thus, to overcome Palos's assertion of qualified immunity, Rios must allege facts sufficient to show that Palos's conduct violated his constitutional rights, and that the violation of his rights was clearly established at the time of

11

Rios's conduct. *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015).

Rios alleges Officer Palos violated his Fourth Amendment rights by using excessive force when Palos discharged his JPX device into the left side of Rios's face. Compl. 3-4 (ECF No. 3). The Fourth Amendment protects individuals from being subjected to excessive force when they are physically apprehended or subdued by agents of the government. *Ramirez*, 3 F.4th at 134 (citing *Graham v. Connor*, 490 U.S. 386, 393–94 (1989)). But the question of what is "excessive" is intertwined with the issue of reasonableness that is embedded within the Fourth Amendment. *Id*; *see also Bradyn S. v. Waxahachie Indep. Sch. Dist.*, 407 F. Supp. 3d 612, 625 (N.D. Tex. 2019) ("A plaintiff's claim for excessive force must be determined according to Fourth Amendment standards because 'all claims that law enforcement officers have used excessive force–deadly or not–in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard[.]'" (citing *Graham*, 490 U.S. at 395)).

Accordingly, to state a claim for excessive force, a plaintiff is required to set forth facts that allege an "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Bradyn S.*, 407 F. Supp. 3d at 626–27 (citing *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016)). Determining whether the force used was reasonable "requires careful

attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Graham*, 490 U.S. at 396 (citation omitted)).

In his Complaint, Rios alleges that Officer Palos employed excessive force on March 3, 2021, "while [Rios] was being arrested for failure to id[.]" Compl. 4 (ECF No. 3). He alleges that while he was lying face down with his hands restrained in handcuffs behind his back, Officer Palos "discharged his weapon (JPX gun) at point-blank range into the left side of [Rios's] face[.]" *Id.* He further alleges he suffered severe burns, a broken molar, swelling and contusions on his face, and extreme pain and suffering for weeks. *Id.* Defendants dispute Rios's characterization of his arrest and allege that he "was actively avoiding arrest and engaged in aggressive and threatening conduct" while the officers were arresting Rios. Mot. Dismiss ¶ 9 (ECF No. 14); *see also* Answer 2-4 (ECF No. 15). Defendants further allege that at the time Officer Palos employed force against Rios, "[Rios] was attempting to flee and was resisting arrest as he thrashed about fighting the officers." Reply 5 (ECF No. 19); *see also* Answer 2-4 (ECF No. 15).

Rios provides no specific allegations detailing the circumstances surrounding his arrest and the conditions confronting Officer Palos

13

immediately prior to his use of force. Without this factual detail, the Court cannot reasonably infer, even taking the present allegations as true, that the force was clearly excessive and that the excessiveness was clearly unreasonable. *See Bradyn S.*, 407 F. Supp. 3d at 626 ("The issue of reasonableness centers on whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances with which he is faced, without regard to the officer's underlying intent or motivation." (citing *Graham*, 490 U.S. at 397)); *Graham*, 490 U.S. at 396 (whether the use of force is reasonable "must be judged from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of hindsight").

The insufficiency of Rios's allegations becomes more apparent in comparison to allegations held to be sufficient. For example, in *Sanders v. Lieutenant Mike Vincent*, plaintiff alleged an officer used excessive force by performing a leg sweep to take plaintiff down. *Sanders v. Lieutenant Mike Vincent*, 2016 WL 5122115, at *9 (N.D. Tex. Sept. 21, 2016) (Fitzwater, J.). In holding that plaintiff plausibly alleged excessive force, the Court highlighted plaintiff's allegations that "at the time [the officer] took him to the ground with a leg sweep, he had already been seized" and "he did not commit any aggressive or violent act; did not make any threats; did not attempt to flee; did not act nervous; did not commit any type of criminal activity; was never told that he was suspected of any crime; was told by [the officer] that he would be arrested if he did not identify himself (even

though failure to identify was not a crime); was not warned in any manner or requested to allow himself to be handcuffed; and was injured by the takedown." *Id.* The Court ultimately held that these detailed allegations, taken as true, established that "the amount of force from the leg sweep would be disproportionate to the lack of need for force." *Id.* at *10. Similarly, in *Lincoln v. Turner*, the Fifth Circuit examined whether a plaintiff sufficiently pleaded excessive force. *Lincoln v. Turner*, 874 F.3d 833 (5th Cir. 2017). In holding that plaintiff had sufficiently pleaded the force employed by the officer was objectively unreasonable, the Court stressed that "*[g]iven* [the plaintiff's] allegations that she did not 'fight, struggle or resist in any way' and 'questioned why she was being taken into custody,' [the officer's] alleged force was excessive." *Id.* at 847 (emphasis added).

In contrast here, Rios does not provide sufficient detail about the surrounding circumstances of Officer Palos's use of force, such as whether Rios attempted to escape—either before or after he was in handcuffs—or presented a safety concern to people around him. He does not fairly engage with or refute Defendants' allegations that Rios was actively resisting arrest and engaging in aggressive conduct at the time Officer Palos discharged his JPX device. Accordingly, Rios does not meet his burden to plead clearly excessive and unreasonable use of force.

Rios also fails to sufficiently plead that any constitutional violation

15

was clearly established at the time of the allegedly violating conduct. "For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Turner v. Lieutenant Driver*, 848 F.3d 678, 685 (5th Cir. 2017). "When considering whether a defendant is entitled to qualified immunity, the court must ask whether the law so clearly and unambiguously prohibited his conduct that every reasonable official would understand that what he is doing violates the law. To answer that question in the affirmative, we must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Id*.

"It is the plaintiff's burden to find a case in his favor that does not define the law at a 'high level of generality.'" *Mohamed for A.M. v. Irving Indep. Sch. Dist.*, 300 F. Supp. 3d 857, 888 (N.D. Tex. 2018), *aff'd sub nom. Mohamed as Next Friend for A.M. v. Irving Indep. Sch. Dist.*, 758 F. App'x 352 (5th Cir. 2019) (citing *Vann v. City of Southaven, Miss.*, 884 F.3d 307, 310 (5th Cir. 2018)). "A plaintiff fails to meet his or her burden of 'showing specific law on point' when he or she does not cite 'a pre-existing or precedential case' from either the Fifth Circuit or Supreme Court that places an officer on notice that his conduct in question violates the Constitution." *Id*. Although this does not mean that "a case directly on point" is required, "existing precedent must have placed the statutory or

16

constitutional question beyond debate." *Sligh v. City of Conroe, Texas*, 87 F.4th 290, 299–300 (5th Cir. 2023) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

Rios fails to provide sufficient allegations to meet his burden of demonstrating that Officer Palos violated a clearly established right. Rios merely offers bald conclusory statements such as "no reasonable official in the shoes of Defendant could have believed that the actions taken were consistent with Plaintiff's constitutional rights." Resp. 2 (ECF No. 18). He otherwise relies on the general proposition that "excessive force constitutes a valid claim under Section 1983 because it violates the Fourth Amendment prohibition against unreasonable seizures." *Id.* ¶ 1. Rios does not offer sufficient detail tying this general proposition to the particular facts of his case and does not attempt to define any clearly established right at an appropriate level of specificity. *See al-Kidd*, 563 U.S. at 742 ("We have repeatedly told courts . . . not to define clearly established law at a high level of generality. The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.").

Rios's allegations are insufficient to overcome Palos's assertion of qualified immunity. The District Judge should therefore grant Defendants' Motion as to Rios's claims against Officer Palos.

17

## Opportunity to Amend

The Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Byrnes*, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). Courts therefore typically allow *pro se* plaintiffs to amend their complaints when the action is to be dismissed pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2. A *pro se* plaintiff may also obtain leave to amend his complaint in response to a recommended dismissal. *See Swanson v. Aegis Commc'ns Grp., Inc.*, 2010 WL 26459, at *1 (N.D. Tex. Jan. 5, 2010); *Scott*, 2008 WL 398314, at *1. However, leave to amend is not automatic and may be refused where it would be futile. *See Morgan v. Chapman*, 969 F.3d 238, 248 (5th Cir. 2020) (citing *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004)).

Here, the Court should allow Rios to file an amended complaint that sets forth additional facts to state a claim on which relief can be granted. The amended complaint, in addition to curing the pleading deficiencies identified in these findings, should be tailored to Officer Palos's assertion of qualified immunity, and fairly engage the supporting allegations Defendants provide in their Answer, including that Rios was actively avoiding arrest and engaging in aggressive and threatening conduct when

18

Officer Palos used the JPX device against Rios.

Indeed, "although a plaintiff may comply with ordinary pleading standards in his initial complaint, and need not anticipate a qualified immunity defense, '[w]hen a public official pleads the affirmative defense of qualified immunity in his answer, the district court may, on the official's motion or on its own, require the plaintiff to reply to that defense in detail' pursuant to Rule 7(a)." *Sanders*, 2016 WL 5122115, at *6 (quoting *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc)). "[T]he reply must be tailored to the assertion of qualified immunity and fairly engage its allegations." *Id.* (citing *Schultea*, 47 F.3d at 1433). "Heightened pleading requires allegations of fact focusing specifically on the conduct of the individual who caused the plaintiffs' injury." *Id.* (citing *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999)). Moreover, the "district court's discretion not to [require a Rule 7(a) reply] is narrow indeed when greater detail might assist." *Id.* (citing *Schultea*, 47 F.3d at 1434; *Reyes*, 168 F.3d at 161 ("Faced with sparse details of claimed wrongdoing by officials, trial courts ought routinely require plaintiffs to file a reply under [Rule] 7(a) to qualified immunity defenses.")).

Rios's amended complaint can accomplish these requirements of a Rule 7(a) reply. *See Foreman v. Texas A&M Univ. Sys. Health Sci. Ctr.*, 2008 WL 4949267, at *4 (N.D. Tex. Nov. 12, 2008) (Lindsay, J.) (requiring plaintiff to file an amended complaint that complies with the requirements

19

of a Rule 7(a) reply).

## Recommendation

For the reasons stated, the District Judge should GRANT Defendants' Motion to Dismiss (ECF No. 14) and DISMISS Rios's claims, unless Rios—within the time to file objections to this recommendation, or a deadline otherwise established by the District Judge—files an amended complaint that sets forth additional facts to state a claim on which relief can be granted.

**SO RECOMMENDED.**

August 9, 2024.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).